**IN THE UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA**

| | |
|---|---|
| 1. RICHARD REIBERT,<br>2. NORMA LOSORNIO,<br><br>          Plaintiffs,<br><br>v.<br><br>1. CSAA FIRE & CASUALTY INSURANCE COMPANY, a foreign for profit Insurance Corporation,<br><br>          Defendant. | )<br>)<br>)<br>)<br>)<br>) Case No.:17-cv-350-CVE-JFJ<br>)<br>)<br>)<br>)<br>)<br>) |

## MOTION TO COMPEL PRODUCTION OF DOCUMENTS FROM DEFENDANT, CSAA FIRE & CASUALTY INSURANCE COMPANY

COMES NOW the Plaintiffs, Richard Reibert and Norma Losornio, by and through its counsel of record, respectfully moving this Court for an Order compelling Defendant, CSAA Fire and Casualty Insurance Company (hereinafter "AAA"), to fully respond to Plaintiffs' discovery requests pertaining to its relationship with Hancock Claims Consultants. In short, Plaintiffs' discovery is relevant as it will prove that Hancock Claims Consultants is unqualified, biased, and outcome-oriented and that AAA knew it at the time it engaged Hancock during Plaintiffs' claim. In support of this proposition, Plaintiffs submit the following brief:

1

# TABLE OF CONTENTS

**FACTUAL AND PROCEDURAL BACKGROUND**……………………….…..…P.4

**DISCOVERY DISPUTE**……………………………..…………………...........…P.8

## ARGUMENT AND AUTHORITY

**I: LEGAL STANDARD**………………….....…....………………………….…..P.11

**II: THE INFORMATION SOUGHT IS RELEVANT TO PLAINTIFFS' BAD FAITH CLAIM..**…..…………………………………………………………………..…..P.12

**III: PLAINTIFFS' DISCOVERY REQUESTS ARE NOT VAGUE OR AMBIGUOUS.**……………..…………………………………………….….P.15

**IV: PRODUCTION OF THE INFORMATION SOUGHT IS NOT UNDULY BURDENSOME AND IS PROPORTIONAL TO THE NEEDS OF THIS CASE..**……………………….…………………………………….......…P.16

**V: PLAINTIFFS WILL AGREE TO ALLOW THE REDACTION OF DOCUMENTS TO PROTECT THE IDENTITIES OF NON-PARTIES**………………………….P.17

**CONCLUSION**……………………………………….……….………….P.17

# **TABLE OF AUTHORITIES**

**CASES**

Buffington v. Gillette, 101 F.R.D. 400, 401 (W.D. Okla. 1980)……………………………..…12

CBP Partners v. The Netherlands Insurance Co., Case No. Civ-11-1326-W (W.D. Okla.)…….14

Midland-Ross Corp. v. United Steelworkers of America, AFL-CIO, 83 F.R.D. 426, 427 (W.D. Pa. 1979)……………………………………………………………………………………12

Moore v. Allstate Insurance Co., Case No. CIV-12-652-D (W.D. Okla.)……………….....14, 15

Nestle Foods Corp. v. Aetna Casualty & Surety Co., 135 F.R.D. 101, 104 (D. N.J. 1990)……..12

Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 353, (1978)………………………………...12

Scott v. Leavenworth Unified School Dist. No. 453, 190 F.R.D. 583, 585 (D. Kan. 1999)…….12

Snowden v. Connaught Labs., Inc., 137 F.R.D. 325, 329 (D. Kan. 1991)……………………....12

Vining v. Enterprise Financial Group, Inc., 148 F.3d 1206, 1213 (10th Cir. 1998)………..…13

YWCA of Oklahoma City v. Melson, 1997 OK 81, 944 P.2d 304, 311………………………....12

**STATUTES**

Fed.R.Civ.P 26(b)(1)……………………………………………………………………………11

Fed.R.Evid. 406………………………………………………………………………………….13

## FACTUAL AND PROCEDURAL OVERVIEW

Plaintiffs, Richard Reibert and Norma Losornio, own a home located at 4103 N. Lions Court in Broken Arrow, Oklahoma. On or about April 26th, 2016, the Plaintiffs' home sustained covered damage as a result of wind. The wind storm uplifted and unsealed the Reiberts' laminated shingles. Many shingles had been pulled through the nail and some had been blown off the roof by wind. These damages are covered pursuant to the terms and conditions of the Reiberts' insurance policy, which insures against "direct physical loss" caused by wind. A claim was timely submitted to Defendant, CSAA Fire & Casualty Insurance Company.

AAA assigned adjuster Olga Killingsworth to the Reibert claim. Mrs. Killingsworth inspected the Reiberts' roof on May 26th, 2016. The seal strips of the unsealed shingles were fresh and shiny in appearance, indicating that they had recently become unsealed by wind. Additionally, many of the unsealed shingles had been pulled through the nails as a result of the windstorm. Mrs. Killingsworth documented granular transfer on the seal strips of the unsealed shingles, indicating that these shingles were properly sealed at the time of installation. Mrs. Killingsworth spent approximately two hours on the roof and took numerous photographs documenting the presence of wind and hail damage. (See Olga Killingsworth's Photographs, Exhibit 1). After inspecting the roof, Mrs. Killingsworth came down and stated that the roof was damaged by wind and that she would recommend that AAA issue payment for full replacement. Mrs. Killingsworth also stated that the roof had hail damage to the shingles and soft metals. Subsequently, Mrs. Killingsworth generated an Xactimate estimate for full roof replacement and authored an internal report to AAA stating that the Plaintiffs' roof needed replacement due to wind and hail. (See Xactimate Estimate for Full Replacement and Loss Report, Exhibits 2 and 3, respectively).

Despite its own adjuster's thorough photo documentation of fresh wind damage, AAA subsequently sent out Blake Clifton with Hancock Claims Consultants to re-inspect the Plaintiffs' roof. Hancock Claims Consultants is an outcome-oriented "ladder assist" company utilized by AAA. Hancock Claims Consultants' Facebook page describes the company as being "devoted to carriers." (See Screenshot from Hancock Claims Consultants' Facebook Page, Exhibit 4). Blake Clifton, Hancock's roof inspector, inspected the Reibert home on June 7th, 2016 on behalf of AAA. Clifton testified in his deposition that he inspected every slope and all shingles on the roof. Following his inspection, Mr. Clifton authored a threadbare, one-page report which was riddled with admitted inaccuracies. (See Hancock Claims Consultants Report and Photographs, Exhibits 5[1] and 6, respectively). Mr. Clifton's report concluded, without any documentation, that the roof was improperly installed. This conclusion directly contradicts the findings of AAA's field adjuster Olga Killingsworth, which were thoroughly documented and photographed. Mr. Clifton is not a licensed insurance adjuster and has no qualifications to inspect roofing systems and identify wind damage. AAA has never provided any training or guidelines to Mr. Clifton. (See Deposition of Blake Clifton, Exhibit 7; Page 37, Lines 3-9). Olga Killingsworth, Defendant's own field adjuster who was present during Mr. Clifton's inspection, testified that Clifton spent 20 minutes or less on the roof and that a reasonable inspection could not have been done in that amount of time. (See Deposition of Olga Killingsworth; Page 50, Lines 9-12; Page 54, Lines 15-19; Page 140, Lines 10-22). During those 20 minutes on the Reiberts' roof, Clifton took only general overview photos which he later testified could not possibly assist a AAA adjuster in identifying the existence or non-existence of wind damage to

---

[1] Exhibit 5 is the Hancock Claims Consultants Report which was utilized as an exhibit during Mr. Clifton's deposition. The markings on Exhibit 5 were done by Mr. Clifton during his deposition and identify admitted

the Reiberts' home. Olga Killingsworth testified that Hancock's report was not reasonable:

> Q: Now, ma'am, if you were bringing a claim for your home, and let's suppose your home has the same damage that you identified from wind as the Reiberts' home, would you believe that the Hancock report was a reasonable representation of those damages?
>
> A: Based on my photo report and the Hancock report, I believe his report was not reasonable.
>
> (See Deposition of Olga Killingsworth, Exhibit 8; Page 173, Lines 22-25; Page 174, Lines 1-6).

It is important to note that, while Mr. Clifton is entirely unqualified to inspect and identify hail and wind damage to roofing systems, he fraudulently holds himself out to be a Haag Engineering certified roof inspector. In an unrelated roof inspection on November 2nd, 2017, Mr. Clifton was tape recorded making fraudulent statements about his qualifications and experience to a local roofing contractor. During this inspection, Mr. Clifton holds himself out as being Haag Certified:

> JORDAN DESBIEN: Would it be smart to get whatever that is you have?
>
> BLAKE CLIFTON: Haag certified?
>
> JORDAN DESBIEN: Yeah.
>
> BLAKE CLIFTON: Yeah.
>
> (See Transcript of Tape-Recorded Conversation, Exhibit 9; Page 66, Lines 16-20)

In this tape recorded conversation, Mr. Clifton goes on to state that he is Haag certified, but that his "license isn't up to date" and that "if somebody ever says, like, let me see your license, I just tell them to eat shit, I'm just like I know the like -- I know my craft". (See Exhibit 9; Page 74, Lines 6-18). This conversation was recorded only six (6) days after Mr. Clifton testified in his

---

mistakes and inaccuracies within the report.

6

deposition that he is not Haag Certified and has never been Haag Certified. (See Exhibit 7, Page 160, Lines 13-15; Page 102, Lines 6-8). Plaintiffs' counsel has also verified through Haag Engineering that Mr. Clifton indeed is not, and has never been, a Haag Certified Roof Inspector.

Based upon Hancock's report and findings, AAA denied the Reiberts' claim by letter dated June 14th, 2016. The denial letter states: "the damages the independent adjuster found were less than your $1,500 deductible. Therefore, this claim will be closed without any payment to you." (See June 14th, 2016 Denial Letter, Exhibit 10). This is an outright falsehood, as Defendant's internal file shows that its independent adjuster Olga Killingsworth actually concluded that the Reiberts' roofing system was totaled by wind and hail and recommended full roof replacement in the amount of $22,441.30. (See Exhibits 2 and 3).

Defendant's use of Hancock to deny payment for covered wind damage is not isolated to the Plaintiffs' claim, but is instead a part of a state-wide pattern and practice designed to limit exposure to wind claims. In response to written discovery, AAA admitted that it has used Hancock Claims Consultants approximately five-hundred and thirty (530) times in the State of Oklahoma since 2014. (See Defendant's Responses to Plaintiffs' Second Set of Interrogatories and Third Set of Requests for Production, Exhibit 11; at Interrogatory No.7). Of those 530 claims, four-hundred and sixty (460) were wind and hail claims like Plaintiffs' claim. (See Exhibit 11, at Interrogatory No.8). Shockingly, Mr. Clifton testified in his deposition that he finds improper installation on 100% of the roofs he inspects. (See Exhibit 7; Page 176, Lines 19-25).

It is the belief of Plaintiffs' counsel that, as a result of this lawsuit, AAA has terminated its relationship with Hancock Claims Consultants, Blake Clifton (doing business as BLAKECCLAIMS LLC), or both. It is also abundantly clear from the arguments of Defendant's

counsel that AAA intends to argue at trial that it was reasonable to rely on Hancock's findings, even though Blake Clifton was unqualified and conducted an improper investigation, because AAA had no reason to know of Hancock's misconduct. As a result, Plaintiffs have issued discovery which will prove that Hancock Claims Consultants is unqualified, biased, and outcome-oriented; and that AAA knew what it was getting it at the time it engaged Hancock to inspect Plaintiffs' property.

## DISCOVERY DISPUTE

Plaintiffs have issued discovery to AAA seeking information regarding Hancock's findings on other AAA wind and hail claims, including how AAA ultimately handled those claims. For the Court's convenience, the discovery requests that are at issue, and AAA's responses thereto, are set forth below:

> **INTERROGATORY NO. 9:** Of the wind claims wherein CSAA Fire & Casualty Insurance Company utilized Hancock Claims Consultants in the past three years in the State of Oklahoma, identify the number of claims where Hancock Claims Consultants found zero or minimal damage to the shingled roofing surface.
>
> **ANSWER TO INTERROGATORY NO. 9:** CSAA objects to this Interrogatory on the grounds that it is overly broad and seeks information that is neither relevant nor reasonably calculated to lead to admissible evidence, as this Interrogatory is not limited to CSAA's utilization of Hancock claims as a vendor to assist in the investigation and evaluation of Oklahoma homeowners' claims arising from claimed hail/wind damage to 30-year composition roofing systems, the type of roofing system installed on Plaintiffs' property. This lawsuit is primarily a dispute between the parties regarding whether or not the *claimed* damage to Plaintiffs' property, purportedly caused by wind or hail, is covered under the subject policy. The requested information will neither prove nor disprove whether CSAA breached its contract with Plaintiffs and if so, whether CSAA breached its duty to deal fairly and in good faith with Plaintiffs. See Ramirez v.American Family Mut. Ins. Co., 652 N.E.2d 511 (Ind. App. 1995); Moses v. State Farm Mut. Auto. Ins. Co., 104 F.R.D. 55 (D.C. Ga. 1984) ("Defendant's conduct regarding the insurance claims of others is of no consequence to this case."); Taco, Inc. v. Federal Ins. Co., C.A. No. 07-27S, 2007 WL 4269810 (D.R.I. 2007) (the court "agrees with Defendant that documents regarding the claims of other insureds is not relevant in this case and, even if it was relevant, production would be

8

disproportionately burdensome."); Retail Ventures, Inc. v. National Union Fire Ins. Co., No. 2:06- CV-443, 2007 WL 3376831 (S.D. Ohio Nov. 8, 2007) ("[T]his court is not persuaded that information related to other policyholders' claims and complaints is relevant.")

CSAA also objects to the request on the grounds that the term "minimal" is undefined, and therefore, the Interrogatory cannot be answered as drafted. Is "minimal" defined by the number of shingles (i.e. 1 shingle, 2 shingles, . . . 100 shingles, etc.) found to be damaged by wind? Or, is minimal defined by the percentage of shingles found to be damaged relative to the entire roof? Is "minimal" defined by the insured? Is "minimal" defined by CSAA? Is "minimal" defined by a third-party entity? Is "minimal" defined by this Court?

CSAA also objects to this Interrogatory on the grounds that it is unduly burdensome. As stated in CSAA's Answer to Interrogatory No. 8, in the past three years, CSAA or the independent adjusters hired by CSAA have requested Hancock's assistance, in one fashion or another, on 466 Oklahoma homeowners' claims arising out "wind and hail claims." There is no way for CSAA to electronically search the reports prepared by Hancock to determine whether the Hancock representative found zero or "minimal" wind damage to the shingled roofing surface. Therefore, to respond to this request, CSAA would be required to perform a manual review of the claims that Hancock provided assistance. CSAA would first have to determine if Hancock prepared a report. CSAA would then have to review the report prepared by Hancock to determine whether Hancock found zero or "minimal" damage (an undefined standard) to the shingled roofing surface. Simply stated, whether the potentially responsive files are review by CSAA's personnel or outsourced, the review process will be absurdly expensive and burdensome. And, given that the information is utterly irrelevant to the claims asserted, this lawsuit requests serves simply is to harass and unnecessarily increase litigation costs.

**INTERROGATORY NO. 10:** Of the hail claims wherein CSAA Fire & Casualty Insurance Company utilized Hancock Claims Consultants in the past three years in the State of Oklahoma, identify the number of claims where Hancock Claims Consultants found zero or minimal damage to the shingled roofing surface.

**ANSWER TO INTERROGATORY NO. 10:** *See* CSAA's objection to Interrogatory No. 9.

**INTERROGATORY NO. 11:** Of the wind claims in the past three years in the State of Oklahoma, identify the number of claims where CSAA Fire & Casualty Insurance Company found zero or minimal damage to the shingled roofing surface.

**ANSWER TO INTERROGATORY NO. 11:** CSAA objects to the present Interrogatory for the reasons set forth in Interrogatory No. 8. However, CSAA

further states that the unduly burdensome and harassing nature of Plaintiffs' Interrogatory is compounded by the fact that CSAA's manual review of the potentially responsive claims would now include every claim submitted for claimed wind/hail damage for the past three years without limitation.

**INTERROGATORY NO. 12:** Of the hail claims in the past three years in the State of Oklahoma, identify the number of claims where CSAA Fire & Casualty Insurance Company found zero or minimal damage to the shingled roofing surface.

**ANSWER TO INTERROGATORY NO. 12:** *See* CSAA's objection to Interrogatory No.11.

**REQUEST FOR PRODUCTION NO. 32:** Produce all reports for all inspections done by Hancock Claims Consultants on behalf of CSAA Fire & Casualty Insurance Company or any affiliated company during the past 2 years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 32:** CSAA objects to this Request for the reasons stated in its Answers to Plaintiffs' Interrogatory Nos. 5 through 12, above. CSAA further objects to this Request on the grounds that it would require the disclosure of personal and private information of its insureds, which CSAA is prohibited to release by state and federal law. The Gramm-Leach Bliley Act ("GLBA"), 15 U.S.C. 6801, provides that "each financial institution has an affirmative and continuing obligation to respect the privacy of its customers and to protect the security and confidentiality of those customers' nonpublic personal information." 15 U.S. § 6801(a). Title 36 O.S. § 307.2 provides that "no person shall disclose any nonpublic personal information contrary to the provisions of Title V of the Gramm-Leach Bliley Act of 1999, Public Law No. 106-102."

**REQUEST FOR PRODUCTION NO. 33:** Produce all photographs for all inspections done by Hancock Claims Consultants on behalf of CSAA Fire & Casualty Insurance Company or any affiliated company during the past 2 years.

**RESPONSE TO REQUEST FOR PRODUCTION NO. 33:** *See* CSAA's Response to Request for Production No. 33.

Plaintiffs anticipate the information sought will show a significant, long term, pattern and practice of AAA using Hancock to justify the denial of wind and hail claims. Likewise, the

documents will prove, contrary to AAA's assertions, that AAA knew just what it was getting when it engaged Hancock to inspect Plaintiffs' property: an outcome-oriented and biased inspection which would find improper installation and justify the denial of the Reibert claim.

The jury should know the truth of the business relationship between AAA and Hancock, especially when AAA intends to argue that it "didn't know" about Hancock's misrepresentations and lack of qualifications and that it was reasonable to rely upon Hancock's opinions. The above discovery is relevant to show that AAA and Hancock are engaged in a pattern of ignoring wind damage and always finding improper installation. It is admitted by Blake Clifton that he finds improper installation on 100% of the roofs he inspects. (Exhibit 7; Page 176, Lines 19-25). This discovery will prove that AAA was well aware of what Mr. Clifton and Hancock Claims Consultants were doing and that AAA reaped the benefits of Hancock's conduct at the expense of the Reiberts and other first-party insureds.

Undersigned counsel certifies that LCvR 37.1 has been complied with prior to bring this motion. On December 8th, 2017 Counsel for the parties met and conferred in good faith, and after a sincere attempt to resolve differences, the parties have been unable to reach an accord with regard to the above mentioned discovery matters.

## ARGUMENT AND AUTHORITY

**I: LEGAL STANDARD**

Fed.R.Civ.P 26(b)(1) provides that "[p]arties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case…Information within this scope of discovery need not be admissible in evidence to be discoverable." Relevance is broadly construed at the discovery stage and a discovery request should be considered relevant if there is any possibility that the information sought may be

relevant to the subject matter of the action. Buffington v. Gillette, 101 F.R.D. 400, 401 (W.D. Okla. 1980). Because the discovery code creates a broad vista for discovery, relevance is construed to include "any matter that bears on, or that reasonably leads to other matters that could bear on, any issue that is or may be in the case." Midland-Ross Corp. v. United Steelworkers of America, AFL-CIO, 83 F.R.D. 426, 427 (W.D. Pa. 1979) (citing Oppenheimer Fund, Inc. v. Sanders, 437 U.S. 340, 353, (1978)); Nestle Foods Corp. v. Aetna Casualty & Surety Co., 135 F.R.D. 101, 104 (D. N.J. 1990). Indeed, discovery should ordinarily be allowed under the concept of relevancy unless it is clear the information sought can have no possible bearing upon the subject matter of the action. Snowden v. Connaught Labs., Inc., 137 F.R.D. 325, 329 (D. Kan. 1991).

The burden of proving that discovery should be limited or not be had is on the objecting party. YWCA of Oklahoma City v. Melson, 1997 OK 81, 944 P.2d 304, 311; See also, Nestle Foods Corp. v. Aetna Casualty and Surety Co., 135 F.R.D. 101, 104 (D. N.J. 1990). When the discovery sought appears relevant, the objecting party must show that the requested discovery "either does not come within the broad scope of relevance as defined under [the discovery code] or is of such marginal relevance that the potential harm occasioned by discovery would outweigh the ordinary presumption in favor of broad disclosure." Scott v. Leavenworth Unified School Dist. No. 453, 190 F.R.D. 583, 585 (D. Kan. 1999) (citations omitted).

**II: THE INFORMATION SOUGHT IS RELEVANT TO PLAINTIFFS' BAD FAITH CLAIM.**

The discovery sought by Plaintiffs is critical to the central issue of bad faith and is plainly relevant to the claims and defenses of the parties. AAA defense will likely argue that it acted reasonably and in good faith by relying on the opinion of the Blake Clifton and Hancock in

the denial of Plaintiffs' wind damage claim. Implicit in this defense is that AAA didn't have any reason to think Blake Clifton or Hancock would be unqualified or biased in its favor. The discovery sought by Plaintiffs will show the opposite. It will prove that, of the hundreds of claims which Hancock has inspected wind and/or hail on behalf of AAA, the vast majority, if not all of them, resulted in findings of "improper installation", no wind or hail damage, and a denial of payment by AAA.

Plaintiffs allege that AAA's denial of their wind claim was in accordance with AAA's routine practice for the handling of like claims involving shingles unsealed by wind. Fed.R.Evid. 406 specifically authorizes evidence regarding the habit or routine practice of an organization to demonstrate that it acted in conformity with its routine practices in the denial of a claim. See also, Vining v. Enterprise Financial Group, Inc., 148 F.3d 1206, 1213 (10th Cir. 1998) (Pursuant to Fed. R. Evid. 406, Court properly allowed testimony from other claimants who had their similar claims denied to show that Enterprise Financial Group habitually denied such claims). The jury is entitled to the truth about the relationship between AAA and Hancock. Plaintiffs should be able to show how many claims involving Hancock have resulted in little or no payment by AAA to the insured, and what Hancock has said in those other reports. This evidence will show that the denial of Plaintiffs' claim was not a "one-off" mistake by AAA, but instead is part of a state-wide pattern and practice of improperly denying wind damage claims based upon inspections done by Hancock, which AAA knows to be biased and outcome-oriented. Plaintiffs believe the reports will show a pattern by Blake Clifton and Hancock of always finding that the damage was caused by something excluded in the policy, such as improper installation. This belief is not unfounded, nor is it rooted in wild speculation. It is based upon Blake Clifton's own testimony stating that he finds 100% of all roofs he inspects for AAA to be improperly installed

and 70% of wind claims to have "zero" wind damage. (See Exhibit 7, Page 174, Lines 22-25; Page 175, Lines 1-21; Page 176, Lines 19-25).

While it is admitted by Mr. Clifton that he always finds the damage to be caused by excluded "improper installation", it is still unknown what AAA does when it evaluates that information. Thus, Mr. Clifton's testimony alone is no substitute for the information sought by Plaintiffs from AAA. The information sought will prove that AAA denies substantially all wind claims based upon Hancock's reports and that AAA either knew or should have known that Hancock and Blake Clifton are unqualified, biased, and outcome-oriented at the time AAA engaged Hancock on the Plaintiffs' claim. The evidence sought will show that AAA is nonetheless relying on Hancock's reports as part of a state-wide pattern and practice of intentionally failing to properly evaluate and issue payment for covered wind claims.

Ordering AAA to produce the information and reports sought by Plaintiffs would not be groundbreaking. At least two federal judges, Senior District Judge West and District Judge DeGiusti, have ordered the production of similar information with respect to an engineering firm hired by insurance carriers to inspect property and author reports. See Order dated May 29th, 2013, <u>CBP Partners v. The Netherlands Insurance Co.</u>, Case No. Civ-11-1326-W (W.D. Okla.); See also, Order dated September 5th, 3013, <u>Moore v. Allstate Insurance Co.</u>, Case No. CIV-12-652-D (W.D. Okla.). Judge DeGiusti's Order in <u>Moore</u> is directly applicable to Plaintiffs' Requests here. In ordering the production of Rimkus Engineering reports done for Allstate for other, non-party insureds the court held that:

> "While Defendant contends that the engineering reports prepared for other insureds' claims, like the one prepared for Plaintiffs' residence, are fact-specific and have no bearing on the issues in this case, it is equally possible that an examination of the reports will reveal a common thread with respect to Rimkus' engineering assessments that will lead to admissible evidence. Rimkus should be

14

> required to produce the engineering reports, subject to reasonable limits regarding the scope and manner of production to which the parties have agreed, so that they can be evaluated and their significance can be determined."

<u>Moore v. Allstate Insurance Co.</u>, Case No. CIV-12-652-D (W.D. Okla.)

The Hancock reports and information sought by Plaintiffs in Interrogatory Nos. 9, 10, 11, 12 and Request for Production Nos. 31, 32, and 33 will show a "common thread" of Blake Clifton and Hancock always finding "improper installation", no wind or hail damage, and a denial of payment by AAA. The documents and information sought by Plaintiffs are discoverable and should be produced. Additionally, and as discussed at greater length in Proposition IV, Plaintiffs have limited the requests in time and scope and are agreeable to reasonable limits regarding manner of production, including the redaction of personal identifying information.

### III: PLAINTIFFS' DISCOVERY REQUESTS ARE NOT VAGUE OR AMBIGUOUS.

Defendant objects to Plaintiffs' discovery requests which seek information regarding wind and hail claims where it was determined that the roofing system had "zero" or minimal" damage:

> CSAA also objects to the request on the grounds that the term "minimal" is undefined, and therefore, the Interrogatory cannot be answered as drafted. Is "minimal" defined by the number of shingles (i.e. 1 shingle, 2 shingles, . . . 100 shingles, etc.) found to be damaged by wind? Or, is minimal defined by the percentage of shingles found to be damaged relative to the entire roof? Is "minimal" defined by the insured? Is "minimal" defined by CSAA? Is "minimal" defined by a third-party entity? Is "minimal" defined by this Court?

(See Exhibit 11, at Interrogatory No. 9)

This objection is baseless. In the "Definitions" section of Plaintiffs' discovery requests, "minimal damage" is defined as follows:

> **"Minimal damage"** shall mean damage to the shingled roofing surface at or

15

      beneath $2,500.00

Accordingly, the Court should disregard Defendant's objections as to vagueness and ambiguity.

### IV: PRODUCTION OF THE INFORMATION SOUGHT IS NOT UNDULY BURDENSOME AND IS PROPORTIONAL TO THE NEEDS OF THIS CASE.

      Production of the information sought would not unduly burden AAA. Defendant argues that providing responses to Interrogatory Nos. 9, 10, 11, 12 and responses to Request for Production Nos. 31, 32, and 33 would be unduly burdensome and "absurdly expensive." AAA also asserts that, in order to comply with these discovery requests, it would have to "perform a manual review of the claims that Hancock provided assistance." However, these claims are misleading. First, Defendant has already identified the Oklahoma claims involving Hancock in its responses to Interrogatory Nos. 7 and 8. Accordingly, the idea that Defendant would be forced to sift through thousands of claims in order to respond to Plaintiffs' discovery requests is inaccurate.

      Secondly, locating and extracting the Hancock reports, photologs, and claim outcome letters from those particular files is not an unduly burdensome task. Defendant utilizes XactAnalysis, a claims management software program which stores estimates, photographs, reports, and claim correspondence, in an easy to access, cloud-based application. Defendant has already identified the five-hundred and thirty (530) claims where it has utilized Hancock Claims Consultants in the State of Oklahoma. Extracting the requested information from those claims is as simple as the press of a button within the XactAnalysis program. The days of file cabinets and sifting through paper documents are long gone. AAA could easily locate and produce the documents requested if it so desired. Instead, AAA would rather "have its cake and eat it too" by arguing that its reliance upon Hancock was reasonable while at the same time withholding the

very documents that would prove it was not.

## V: PLAINTIFFS WILL AGREE TO ALLOW THE REDACTION DOCUMENTS TO PROTECT THE IDENTITIES OF NON-PARTIES.

Defendant argues that they cannot produce documents responsive to Plaintiffs' Request for Production Nos. 31, 32, and 33 because it "would require the disclosure of personal and private information of its insureds." This is a legitimate concern, but not one which justifies non-production of the requested documents and information. Firstly, a Protective Order has been entered in this case which protects confidential information from improper disclosure. Plaintiffs have no objection to the documents sought being designated and marked as "Confidential" pursuant to the Protective Order. Additionally, Plaintiffs are agreeable to allow limited redaction of the documents, to the extent that the documents contain personal, identifying information, in order to protect the identities of non-parties.

## CONCLUSION

For the above-stated reasons, Plaintiffs respectfully request entry of an Order compelling full and complete responses to Interrogatory Nos. 9, 10, 11, 12 and responses to Request for Production Nos. 31, 32, and 33.

Respectfully submitted,

/s/ Matthew M. McGrew
Michael D. McGrew, OBA#32065
McGrew, McGrew & Associates
400 N. Walker, Suite 115
Oklahoma City, Oklahoma 73102
405-235-9909 telephone
405-235-9929 facsimile
mcgrewslaw@yahoo.com
***Attorney for Plaintiffs***

## CERTIFICATE OF SERVICE

I hereby certify that on the 9th day of December, 2017, I electronically transmitted the foregoing document, Plaintiffs' Motion to Compel to the Clerk of Court using the ECF System for filing and transmittal of a Notice of Electronic Filing to the following ECF registrants:

Gerard F. Pignato
Erin Rooney
119 N. Robinson, 11th floor
Oklahoma City, OK 73102

**COUNSEL FOR DEFENDANT**

*S/ Matthew M. McGrew*
Matthew M. McGrew