# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF OKLAHOMA

| | | |
|---|---|---|
| RICHATD REIBERT, and <br> NORMA LOSORNIO, <br><br> Plaintiffs, <br><br> v. <br><br> CSAA FIRE & CASUALTY INSURANCE COMPANY, a foreign for profit insurance corporation, <br><br> Defendant. | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | Case No. 17-CV-350-CVE-JFJ |

## OPINION AND ORDER

Before the Court is Plaintiffs' Motion to Compel (ECF No. 22), wherein Plaintiffs seek discovery regarding Defendant's use of and reliance upon a company known as Hancock Claims Consulting ("Hancock"). Due to the upcoming discovery deadline, the motion was briefed on an expedited basis. The Court conducted a hearing on December 28, 2017.

**I.    Background**

In their Complaint, Plaintiffs allege that the roof of their residence was damaged in a wind storm on April 26, 2016. Plaintiffs submitted a claim to Defendant CSAA Fire & Casualty Insurance Company ("CSAA") under their homeowners' insurance policy. Plaintiffs assert claims under Oklahoma law for breach of contract and breach of the duty of good faith and fair dealing. When Plaintiffs filed the motion to compel, the parties had completed a significant amount of discovery. The following background facts are based on evidence submitted in support of briefing on the motion to compel or answers to the Court's questions during oral argument.

Following an initial investigation of Plaintiffs' claim by independent adjuster Olga Killingsworth ("Killingsworth"), Killingsworth found hail and wind damage to Plaintiffs' roof.

CSAA questioned whether hail damage was covered and instructed Killingsworth to conduct further investigation of the wind damage. For purposes of the second inspection, Killingsworth employed Hancock, which is known as a "ladder assist" company. Blake Clifton ("Clifton") was the Hancock technician sent to Plaintiffs' home. During discovery, Plaintiffs gathered evidence that could potentially show that Clifton lacked any relevant certifications or qualifications to inspect roofs for wind/hail damage, that Clifton spent twenty minutes on Plaintiffs' roof, and that Clifton submitted a one-page report finding no hail damage, no wind damage, and improper installation of shingles. CSAA's Final Loss Report provides:

> REINSPECTION 6/7/2016 – met with member and Hancock ladder assist due to 14/12 pitch of the left and right main slopes. Per Hancock report – "No wind damage was found on slopes. Damage was found on some soft metals. Roof was in good condition. Improper install of shingles was found on slopes." Hail damaged items were removed from the estimate due to measurable hail was found at the residence prior the policy inception. Estimate provided for interior damages due to possible wind driven rain.

Def.'s Resp. to Mot. to Compel at Ex. 5, ECF No. 34-5. CSAA denied Plaintiffs' claim. CSAA contends it first learned that Clifton lacked the necessary qualifications during Clifton's deposition and that it reasonably relied on Hancock's representations on its website regarding its technicians' qualifications.

Following the depositions of Clifton and others, Plaintiffs sought additional discovery from CSAA. In response to these additional requests, CSAA stated that it utilized Hancock's services on a total of approximately 460 wind and hail damage claims in the State of Oklahoma in the past three years. CSAA objected to other requests on grounds of relevance, vagueness, and undue burden. Plaintiffs now seek to compel responses to the following discovery requests:

> Interrogatory 9: Of the wind claims wherein CSAA Fire & Casualty Company utilized Hancock Claims Consultants in the past three years in the State of

Oklahoma, identify the number of claims where Hancock Claims Consultants found zero or minimal damages[1] to the shingled roof surface.

Interrogatory 10: Of the hail claims wherein CSAA Fire & Casualty Company utilized Hancock Claims Consultants in the past three years in the State of Oklahoma, identify the number of claims where Hancock Claims Consultants found zero or minimal damages to the shingled roof surface.[2]

Interrogatory 11: Of the wind claims in the past three years in the State of Oklahoma, identify the number of claims where CSAA Fire & Casualty Company found zero or minimal damages to the shingled roof surface.

Interrogatory 12: Of the hail claims in the past three years in the State of Oklahoma, identify the number of claims where CSAA Fire & Casualty Company found zero or minimal damages to the shingled roof surface.

Request for Production 32: Produce all reports for all inspections done by Hancock Claims Consultants on behalf of CSAA Fire & Casualty Company or other affiliated company during the past two years.

Request for Production 33: Produce all photographs for all inspections done by Hancock Claims Consultants on behalf of CSAA Fire & Casualty Company or other affiliated company during the past two years.

Pl.'s Mot. to Compel at 8-10 (footnotes added), ECF No. 22.

## II.     Legal Standard

Federal Rule of Civil Procedure 1 is the guidepost for resolution of discovery disputes. It provides that the rules of civil procedure should be "construed, administered, and employed by the court and the parties to secure the just, speedy, and inexpensive determination of every action and proceeding." Fed. R Civ. P. 1. Federal Rule of Civil Procedure 26(b)(1) governs the specific dispute in this case. As amended effective December 1, 2015 ("2015 Amendment"), Rule 26(b)(1) provides:

---

[1] "Minimal damages" is defined in the requests as $2,500.00 or less. CSAA abandoned its vagueness objection upon realizing this definition existed, and this objection is overruled as moot.
[2] CSAA did not argue that hail-damage claims were irrelevant or less relevant than wind-damage claims. Instead, CSAA made identical arguments in relation to both types of claims. Therefore, the Court's analysis does not distinguish between wind and hail claims.

> Unless otherwise limited by court order, the scope of discovery is as follows: Parties may obtain discovery regarding any nonprivileged matter that is relevant to any party's claim or defense and proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit. Information within this scope of discovery need not be admissible in evidence to be discoverable.

For purpose of any requested information, courts must inquire: "(1) is the information privileged; (2) is it relevant to a claim or defense; and (3) is it proportional to the needs of the case." *Gordon v. T.G.R. Logistics, Inc.*, 321 F.R.D. 401, 402 (D. Wyo. 2017). In this case, CSAA disputes the relevance and proportionality of the requested discovery.

### A. Relevance Standard

Rule 26(b)(1) permits discovery "relevant to any party's claim or defense." Following the 2015 Amendment, "relevance is still to be 'construed broadly to encompass any matter that bears on, or that reasonably could lead to other matter that could bear on' any party's claim or defense." *United States ex rel. Shamesh v. CA, Inc.*, 314 F.R.D. 1, 8 (D.D.C. 2016) (quoting *Oppenheimer Fund, Inc. v. Sanders*, 437 U.S. 340, 351 (1978)). Lower courts within the Tenth Circuit have endorsed this broad view of relevance following the 2015 Amendment. *See Benavidez v. Sandia Nat'l Labs.*, 319 F.R.D. 696, 717 (D.N.M. 2017) (adopting above-quoted standard for analyzing whether discovery is "relevant" to party's claim or defense); *Rowan v. Sunflower Elec. Power Corp.*, No. 15-CV-9227-JWL-TJJ, 2016 WL 3745680, at *2 (D. Kan. July 13, 2016) (same); *Taylor v. Hy-Vee, Inc.*, No. 15-9718-JTM, 2016 WL 7405669, at *5 n.36 (D. Kan. Dec. 22, 2016) (same); *see also Henry v. Morgan's Hotel Group, Inc.*, 2016 WL 303114 at *3 (S.D.N.Y. Jan. 25, 2016) (same). Courts use "a broad definition of relevance when determining whether discovery is permissible, because discovery is designed to help define and clarify the issues." *Barton v.*

*Tomacek*, No. 11-CV-0619-CVE-TLW, 2012 WL 4735927, at *4 (N.D. Okla. Oct. 3, 2012) (internal quotation omitted).

The 2015 Amendment deleted the following oft-cited language: "Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence." This language was removed because it was being used "by some, incorrectly, to define the scope of discovery" and to "swallow" the other appropriate limitations on discovery. *See* Fed. R Civ. P. 26 advisory committee's notes to the 2015 amendment. In its place, the rule simply states that "[i]nformation within this scope of discovery need not be admissible in evidence to be discoverable." Fed. R. Civ. P. 26(b)(1). After the 2015 Amendment, "relevance" for purposes of discovery remains broader than "relevance" for purposes of trial admissibility. The 2015 Amendment also deleted language that permitted discovery "of any matter relevant to the subject matter involved in the action" upon a showing of good cause. This language was removed because it was "rarely invoked" and redundant with language permitting discovery relevant to a claim or defense:

> The amendment deletes the former provision authorizing the court, for good cause, to order discovery of any matter relevant to the subject matter involved in the action. The Committee has been informed that this language is rarely invoked. The distinction between matter relevant to a claim or defense and matter relevant to the subject matter was introduced in 2000. The 2000 Note offered three examples of information that, suitably focused, would be relevant to the parties' claims or defenses. The examples were "other incidents of the same type, or involving the same product"; "information about organizational arrangements or filing systems"; and "information that could be used to impeach a likely witness." *Such discovery is not foreclosed by the amendments*.

*See* Fed. R Civ. P. 26 advisory committee's notes to the 2015 amendment (emphasis added). Although the amendment eliminates the distinction between "claims or defense" discovery and "subject matter" discovery, it does not appear to foreclose any category of previously available

5

information.[3]  In light of these deletions, parties must demonstrate the requested discovery's relevance to a "claim or defense" and should avoid using any outdated language in their briefs. *See* Amii N. Castle, *A Comprehensive Overview: 2015 Amendments to the Federal Rules of Civil Procedure*, 64 U. Kan. L. Rev. 837, 853 (2016) (cautioning that attorneys "should omit 'relevant to [] subject matter'" and "reasonably calculated" from "the discovery vernacular altogether").

Although the broad concept of relevance remains largely intact following the 2015 Amendment, Rule 26(b)(1) "does not authorize unlimited discovery." *Barton*, 2012 WL 4735927, at *4. The fact that a plaintiff has a "broad theory of the case" does not automatically justify broad discovery. *Id.* Courts should prevent speculative "fishing expeditions," whereby a party "pleads its allegations in entirely indefinite terms, without in fact knowing of any specific wrongdoing by the defendant, and then bases massive discovery requests upon those nebulous allegations, in the hope of finding particular evidence of wrongdoing." *Koch v. Koch Indus., Inc.*, 203 F.3d 1202, 1238 (10th Cir. 2000). This type of fishing expedition is an abuse of the judicial process. *Id.* The 2015 Amendment continues the trend of "encouraging more judicial involvement in discovery," and the broad relevance standard must be considered in conjunction with the proportionality considerations. *See* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment ("The present amendment again reflects the need for continuing and close judicial involvement in the cases that do not yield readily to the ideal of effective party management."); *see also Henry*, 2016 WL 303114, at *3 (explaining that the amended rule is intended to "encourage judges to be more

---

[3] Deletion of this language eliminated the "two-tiered" discovery process created by the 2000 amendments. The Tenth Circuit had previously explained that "the first tier [was] attorney-managed discovery of information relevant to any claim or defense of a party, and the second [was] court-managed discovery that can include information relevant to the subject matter of the action." *In re Cooper Tire & Rubber Co.*, 568 F.3d 1180, 1190 (10th Cir. 2009). There are no longer two tiers of discovery, and this language is inapplicable to the current Rule 26(b)(1).

aggressive in identifying and discouraging discovery overuse by emphasizing the need to analyze proportionality before ordering production of relevant information") (internal quotation omitted).

B.     **Proportionality Considerations**

The most significant change made by the 2015 Amendment to Rule 26(b)(1) was the increased emphasis on the concept of proportionality.[4]  Moving these considerations to the text of Rule 26(b)(1) reinforced the Court's obligation to consider proportionality factors when ruling on disputes and the parties' obligation to consider the factors when submitting their requests, responses, and objections.  *See* Fed. R. Civ. P. 26 advisory committee's note to 2015 amendment; *see also Nat'l R.R. Passenger Corp. v. Cimarron Crossing Feeders*, LLC, No. 16-CV-1094-JTM-TJJ, 2017 WL 4770702, at *4 (D. Kan. Oct. 19, 2017) ("One of the changes restored proportionality to the definition of the scope of discovery and was intended to reinforce the parties' Rule 26(g) obligation to consider the proportionality factors in discovery.").

A "proportionality" analysis involves six enumerated considerations: (1) the importance of the issues at stake in the action, (2) the amount in controversy, (3) the parties' relative access to relevant information, (4) the parties' resources, (5) the importance of the discovery in resolving the issues, and (6) whether the burden or expense of the proposed discovery outweighs its likely benefit.  Fed. R Civ. P. 26(b)(1).  The committee explained that "monetary stakes" of a given case are "only one factor, to be balanced against other factors" and that vindication of personal or public values may play a role in the proportionality analysis.  Fed. R Civ. P. 26 advisory committee's notes to the 2015 amendment.  Moving these considerations to the text of Rule 26(b)(1) was not

---

[4] The considerations formerly appearing in Rule 26(b)(2)(c)(iii), along with one addition, were labeled as "proportionality" considerations and moved to the text of Rule 26(b)(1).  *See* Fed. R Civ. P. 26 advisory committee's notes to the 2015 amendment (explaining that considerations were "slightly rearranged and with one addition").

7

intended to "place on the party seeking discovery the burden of addressing all proportionality considerations." *Id.* Nor was it intended to "permit the opposing party to refuse discovery simply by making a boilerplate objection that it is not proportional." *Id.* The committee offered the following explanation of the parties' respective obligations, and the Court's role, in assessing proportionality:

> A party claiming undue burden or expense ordinarily has far better information -- perhaps the only information -- with respect to that part of the determination. A party claiming that a request is important to resolve the issues should be able to explain the ways in which the underlying information bears on the issues as that party understands them. The court's responsibility, using all the information provided by the parties, is to consider these and all the other factors in reaching a case-specific determination of the appropriate scope of discovery.

*Id.*

### III. Relevance of Plaintiffs' Discovery Requests

The relevance of discovery regarding Hancock's inspection of the roofs of hundreds of other insureds is not "readily apparent," and Plaintiffs bear the "burden of showing the relevance of the requested information." *See Design Basics, L.L.C. v. Strawn*, 271 F.R.D. 513, 523 (D. Kan. 2010) ("[W]hen the relevancy of the requested discovery is not readily apparent, the party seeking the discovery has the burden to show the relevancy of the request."); *Barton*, 2012 WL 4735927, at *4. In their briefs, Plaintiffs argue the information is relevant to the reasonableness of CSAA's reliance on Hancock's report:

> [CSAA] will likely argue that it acted reasonably and in good faith by relying on the opinion of Blake Clifton and Hancock in the denial of Plaintiffs' wind damage claim. Implicit in this defense is that [CSAA] didn't have any reason to think Blake Clifton or Hancock would be unqualified or biased in its favor. The discovery sought by Plaintiffs will show the opposite. It will prove that, of the hundreds of claims which Hancock has inspected wind and/or hail on behalf of AAA, the vast majority, if not all of them, resulted in findings of "improper installation," no wind or hail damage, and a denial of payment by [CSAA].

Pl.'s Mot. to Compel at 13, ECF No. 22. Plaintiffs contend CSAA wants to have "its cake and eat it too" by "arguing that its reliance on Hancock was reasonable while at the same time withholding the very documents that show it was not." Pl.'s Reply in Support of Mot. to Compel at 2, ECF No. 35. Plaintiffs also argue the information is relevant to show a state-wide, consistent pattern of CSAA's denial of claims in which Hancock conducted the roof inspection:

> Plaintiffs allege [CSAA's] denial of their wind damage claim was in accordance with [its] routine practice for the handling of like claims involving shingles unsealed by wind. . . . Plaintiffs should be able to show how many claims involving Hancock have resulted in little or no payment by [CSAA], and what Hancock has said in those reports. This evidence will show that the denial of Plaintiffs' claim was not a "one-off" mistake by [CSAA] but instead is part of a state-wide pattern and practice of improperly denying wind damage claims based upon inspections done by Hancock.

Pl.'s Mot. to Compel at 13, ECF No. 22.[5]

In response, CSAA argues that Plaintiffs have no factual support for these theories of bad-faith conduct and that "Plaintiffs are on a fishing expedition hoping to find evidence of their baseless and conclusory allegations." Def.'s Resp. to Mot. to Compel at 6, ECF No. 34. CSAA also argues that the facts of this case do not support any finding of the intentional use of Hancock to deny Plaintiffs' claim. *See id.* at 11 ("There is not a shred of evidence that CSAA engaged the services of Hancock for the purposes of obtaining a biased report."). CSAA further argues that the discovery cannot have any significance given the disparity between claims and varying reasons for denial. *See id.* at 12 (arguing that discovery would "[a]t most" show that "CSAA's investigation revealed that the insured had not presented a claim that was covered under the terms of the policy, the damage did not exceed the insured's deductible, etc.").

---

[5] For the first time at oral argument, Plaintiffs also argued the evidence was relevant to their claim for punitive damages. Because the Court finds the requested information relevant to reasonableness and the "pattern and practice" theory, both of which were fully briefed by both parties, the Court does not reach this issue.

Plaintiffs have met their burden of showing the requested discovery, as limited by the Court in Part V of this Opinion and Order, is relevant to the second and third elements of their bad-faith claim under Oklahoma law. *See* Okla. Unif. Jury Instr. Civil (2d) No. 22.2 (requiring Plaintiffs to show CSAA's "refusal to pay the claim in full was unreasonable under the circumstances" and that CSAA "did not deal fairly and in good faith with Plaintiffs"); *Garnett v. Gov't Employees Ins. Co.*, 186 P.3d 935, 944 (Okla. 2008) (explaining that "[a] central issue is whether the insurer had a good faith belief in some justifiable reason for the actions it took or omitted to take that are alleged to be violative of the duty of good faith and fair dealing"). Under the specific facts presented, discovery regarding Hancock's performance of other roof inspections is relevant to whether CSAA acted reasonably and in good faith in relying upon Clifton and/or Hancock. CSAA contends each claim is unique and that there could be no meaningful or relevant use of the requested data. However, CSAA's arguments are more akin to admissibility arguments and are premature. Requested information need not be admissible to be discoverable, Fed. R. Civ. P. 26(b)(1), and discovery regarding "other incidents" may be permissible if relevant to a claim or defense and otherwise proportional to the needs of the case, *see* Fed. R. Civ. P. 26 advisory committee's notes to 2015 amendment. In this case, the requested statistics and reports are relevant to proving specific elements of Plaintiffs' claim and refuting CSAA's defenses. Further, if Clifton inspected fifty homes where insureds claimed wind damage and found zero wind damage on every occasion, this information could potentially be relevant to the reasonableness of CSAA's reliance on Clifton/Hancock, irrespective of any individualized analysis of these other insureds' claims.

Plaintiffs have also shown relevance to a "pattern" theory of bad-faith conduct, which is generally permitted under Oklahoma law. *See Vining v. Enter. Fin. Group*, 148 F.3d 1206, 1218 (10th Cir. 1998) (finding that, where plaintiff sought to prove a pattern and practice of bad-faith

conduct by insured, evidence regarding other insureds was relevant to show defendant "acted in this case under Federal Rule of Evidence 406 (habit)" and that prejudice of evidence did not outweigh relevance of inquiry into defendant's "general business practices"); *Metzger v. Am. Fid. Assur. Co.*, No. CIV-05-1387-M, 2007 WL 4342082, at *1 (W.D. Okla. Dec. 7, 2007) (same).[6] For the same reasons explained above, the requested numerical data and reports are relevant to the specific theory that CSAA engaged in a state-wide pattern of denying claims in bad faith based on Hancock's findings and reports. Oklahoma courts have granted similar discovery regarding an alleged "pattern" of bad-faith conduct. *See Magellan v. Zurich Am. Ins. Co.*, No. 16-CV-668-CVE-FHM 2017 WL 3579209, at *2 (N.D Okla. Aug. 18, 2017) (compelling request for production of 85 other claim files where claimant was an employee of named insured and claimant's policy had similar language to plaintiff's policy based on relevance to pattern and practice theory and punitive damages); *Jones v. Farmers Ins. Co.*, No. CIV-11-159-R, 2012 WL 12863976, at *2-3 (W.D. Okla. Feb. 29, 2012) (compelling interrogatory answer regarding number of times in past five years Farmers did not pay for roof damages under a specific circumstance similar to plaintiffs' denial, as relevant to whether Farmers engaged in pattern or practice of denying such claims and to punitive damages); *Providence Church, Inc. v. Guideone Ins.*, CIV-06-1201-D, 2008 WL 11338501, at *4 (W.D. Okla. Jan. 18, 2008) (granting discovery requests regarding "code upgrade" claims of other insureds as relevant to whether defendant engaged in pattern and practice of categorically refusing certain claims and as relevant to punitive damage considerations).

---

[6] Although CSAA cited cases standing for the general proposition that "conduct regarding other insureds is of no consequence," *see, e.g., Moses v. State Farm Mut. Auto. Ins. Co.*, 104 F.R.D. 55, 57 (N.D. Ga. 1984); *Taco, Inc. v. Fed. Ins. Co.*, No. CIV.A. 07-27S, 2007 WL 4269810, at *2 (D.R.I. Nov. 30, 2007), these cases did not involve interpretation of Oklahoma law and/or did not involve a tort claim for breach of the duty of good faith and fair dealing.

CSAA argues that, even if generally permitted under Oklahoma law, "pattern" discovery should not be permitted here because the facts do not conform to the alleged pattern of bad-faith conduct. Specifically, CSAA contends that Plaintiffs' claim history demonstrates that CSAA employees had legitimate reasons for requesting further inspection by Hancock; that Killingsworth (not CSAA) made the decision to hire Hancock; and that Killingsworth (not Hancock) found "zero wind damage" to Plaintiffs' roof. For purpose of this discovery ruling, Plaintiffs have made an adequate showing of relevance to a "pattern" of conduct consistent with CSAA's use of Hancock in conjunction with its denial of these Plaintiffs' claim. As the Court observed during the hearing, even though the final loss report was drafted by Killingsworth, it uses the words "per Hancock report." Further, it appears Hancock was either the only vendor or one of two "ladder assist" vendors approved by CSAA during the relevant time. CSAA may ultimately demonstrate an absence of bad-faith conduct and/or avoid admission or use of this evidence; however, the requested information is relevant for discovery purposes.

The Court has carefully considered whether Plaintiffs are engaged in a fishing expedition, *i.e.*, whether Plaintiffs seek the information based on mere speculation about what these numbers/reports might show. In this case, Plaintiffs have garnered adequate support for their theories and are not abusing the judicial process. Clifton testified in his deposition that he was not a licensed adjuster, had no relevant qualifications or certifications, and received no training from CSAA. Clifton estimated that, in cases where he examined wind damage, he found no damage sixty-five to seventy percent of the time. Clifton Dep. 174:22-175:5, Ex. 7 to Pl.'s Mot. to Compel, ECF No. 22-7. He also answered "yeah" to the question of whether he was finding "improper installation . . . almost universally" and stated that "[h]e would say probably 100 percent of my roofs are going to have some sort of installation error." *Id.* at 176:19-25. This is important,

according to Plaintiffs, because failing to distinguish between wind-damaged unsealed shingles which are properly installed, and those which are improperly installed, could result in repeated improper denials by CSAA. *See* Pls.' Reply in Support of Mot. to Compel at 3. Although CSAA adamantly disputes the meaning and context of this deposition testimony by Clifton and disputes that it had any reason to believe Clifton lacked the necessary qualifications, Plaintiffs have provided at least some support for their assertion that the requested discovery could be numerically significant or reveal a significant pattern of conduct by Hancock/CSAA. Therefore, based on existing evidence regarding Clifton's usual practices, and the fact that he was the Hancock representative who inspected Plaintiffs' roof, the Court concludes that Plaintiffs are not engaging in a fishing expedition or otherwise abusing the judicial process.[7]

## IV. Proportionality of Plaintiffs' Discovery Requests

CSAA focused its argument on the "burden" consideration of the proportionality analysis, and the Court addresses the burden of each request. Although not specifically argued by CSAA, the Court also addresses the other proportionality factors below.

### A. Burden - Interrogatories 9 and 10

Answering these interrogatories will require CSAA to review the approximately 460 claims already identified and determine the total the number of times Hancock found $2,500.00 or less in wind or hail damages. CSAA contends this cannot be done with electronic search terms and will require manual review of each claim. Even manual review of this number of reports for this information is not an undue burden, in consideration of the needs of the case and other

---

[7] At the hearing, the Court inquired whether Clifton was one of several Hancock technicians in the State of Oklahoma. If Clifton was one of a dozen, his deposition testimony has less meaning in relation to a request for all Hancock reports. However, the parties stated that Hancock utilizes a small number of technicians in the area, and that Clifton is currently one of two technicians for Hancock in this area.

proportionality factors discussed below. Considering the specific evidence presented by Plaintiffs to support the requests, the Court finds the burden and expense of responding to Interrogatories 9 and 10, as described by CSAA, does not outweigh the likely benefit of the discovery.

**B.      Burden - Interrogatories 11 and 12**

The Court agrees with CSAA that, as originally worded, Interrogatories 11 and 12 were overly burdensome because they requested CSAA's findings of zero to minimal damages in *all* wind and hail cases in the State of Oklahoma for the past three years. As explained above, the Court finds Plaintiffs' requested discovery relevant only in cases where Hancock was utilized. Plaintiffs' counsel could not articulate the need for *all* wind and hail claims and indicated these requests were intended to be limited to claims in which Hancock was utilized. Although Interrogatories 11 and 12 were poorly drafted, this limitation is consistent with Plaintiffs' arguments in their briefs. *See* Pls.' Reply in Support of Mot. to Compel at 4 (arguing that "it is still unknown what [CSAA] does when it evaluates the information it receives from Hancock" and that the information sought "will prove that [CSAA] denies substantially all wind claims based upon Hancock's reports").

As limited by the Court to those claims in which CSAA utilized Hancock, the Court finds Interrogatories 11 and 12 to be relevant and not overly burdensome. Again, CSAA has already identified the approximate 460 instances in which it utilized Hancock to inspect for wind or hail damage during the requested time frame. CSAA's remaining task is to total the number of instances in which CSAA found zero or minimal wind or hail damage in these same cases. As limited by the Court, the discovery is now targeted to the specific theory involving Hancock and is reasonably limited in temporal scope. Considering the specific evidence presented by Plaintiffs

to support the requests, the Court finds the burden of responding to Interrogatories 11 and 12 does not outweigh the likely benefit of the discovery.

C. **Burden - Requests for Production 32 and 33**

The Court agrees with CSAA that, as originally worded, Requests for Production 32 and 33 were overly broad and burdensome because they requested all Hancock reports and photographs produced for CSAA, rather than those limited to wind and hail claims in the State of Oklahoma. Plaintiffs' counsel indicated at the hearing that he believed these were implicit limitations based on the nature of Hancock's work for CSAA and that these requests were intended to be limited in this manner.

As limited by the Court to Hancock reports addressing wind and hail claims in the State of Oklahoma, the Court finds the requests to be relevant and not overly burdensome. Plaintiffs have already identified the requested Hancock reports for the past three years, and the requests for production are limited to the past two years. Therefore, CSAA will be required to generate less than 460 reports and then redact names and addresses of other insureds. The discovery is targeted to the specific theory involving Hancock and is reasonably limited in temporal scope. Considering the specific evidence presented by Plaintiffs to support the requests, the Court finds the burden of responding to Requests for Production 32 and 33 does not outweigh the likely benefit of the discovery.

D. **Other Proportionality Considerations**

All requested discovery, as limited by the Court above, is proportional to the needs of the case. The requested discovery is limited to CSAA's use of Hancock in Oklahoma over a three-year period, which involves a known universe of less than five-hundred claims. Plaintiffs are requesting numerical data and Hancock reports, rather than the entire claim files. Plaintiffs desire

15

to test the reasonableness of CSAA's actions and a possible pattern of wrongful denials, and Plaintiffs have presented support for their theory through Clifton's deposition testimony. The Court finds the burdens imposed upon CSAA are not onerous and are proportional, considering the amount in controversy and the importance of the discovery to the "unreasonableness" and "bad-faith" elements of Plaintiffs' claims. CSAA has already identified the information and relevant reports and has adequate resources to conduct the review and generate the documents. In addition, as explained above in relation to each specific request, the burden of responding to these requests does not outweigh the likely benefit of the discovery.

In many cases alleging breach of the duty of good faith and fair dealing, this type of "other insured" evidence may not survive a relevance or proportionality analysis. However, as explained above, Plaintiffs in this case have made a showing that justifies limited, targeted discovery related to Hancock's findings and CSAA's reliance thereon.

## V. Conclusion

Plaintiffs' Motion to Compel (ECF No. 22) is GRANTED, as limited by the Court in the bolded language below. CSAA shall respond to the discovery requests no later than fourteen days from the date of this Order, or by January 17, 2018.

> Interrogatory 9: Of the wind claims wherein CSAA Fire & Casualty Company utilized Hancock Claims Consultants in the past three years in the State of Oklahoma, identify the number of claims where Hancock Claims Consultants found zero or minimal damages to the shingled roof surface.
>
> Interrogatory 10: Of the hail claims wherein CSAA Fire & Casualty Company utilized Hancock Claims Consultants in the past three years in the State of Oklahoma, identify the number of claims where Hancock Claims Consultants found zero or minimal damages to the shingled roof surface.
>
> Interrogatory 11: Of the wind claims in the past three years in the State of Oklahoma **[wherein CSAA Fire & Casualty Company utilized Hancock Claims Consultants]**, identify the number of claims where CSAA Fire & Casualty Company found zero or minimal damages to the shingled roof surface.

Interrogatory 12: Of the hail claims in the past three years in the State of Oklahoma, **[wherein CSAA Fire & Casualty Company utilized Hancock Claims Consultants],** identify the number of claims where CSAA Fire & Casualty Company found zero or minimal damages to the shingled roof surface.

Request for Production 32: Produce all reports for all inspections done by Hancock Claims Consultants on behalf of CSAA Fire & Casualty Company or other affiliated company during the past two years **[in the State of Oklahoma related to wind or hail damage]**.

Request for Production 33: Produce all photographs for all inspections done by Hancock Claims Consultants on behalf of CSAA Fire & Casualty Company or other affiliated company during the past two years **[in the State of Oklahoma related to wind or hail damage]**.

SO ORDERED this 3rd day of January, 2018.

**JODI F. JAYNE, MAGISTRATE JUDGE**
**UNITED STATES DISTRICT COURT**